**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

**UNITED STATES OF AMERICA**

**V.**

**CRIMINAL NO. 05-100-SLR**

**BURTRAN MARSHALL**

## MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

Burtran Marshall, by and through his counsel Peter Levin, Esquire, respectfully requests this Court to hold a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), concerning the presence of false statements and/or omissions in the affidavit of probable cause supporting a warrant for the search of the premises in question known as 204 N. West Street, Apartment D, Wilmington, Delaware, and, after such a hearing, enter an Order suppressing any physical evidence and statements. In support, the Defendant states as follows:

On October 14, 2003, Detectives Thomas Looney and Vincent Jordan of the Wilmington Police Department executed a search warrant at 204 N. West Street, Apartment D, Wilmington, Delaware. As a result of the search, there was a seizure of contraband and United States currency as well as items belonging to the defendant.

Later that day a statement was taken of the defendant.

Although the affidavit in support of the search warrant appears facially to provide probable cause for the search of the residence, the affidavit contains knowing,

intentional, or reckless false statements and/or omissions concerning substantial reasons to doubt the credibility of the confidential informant. Without such false statements and/or omissions, the affidavit would not have provided probable cause to support the search of the premises.

The defendant believes that the confidential informant referred to in the affidavits in support of the search warrant: (1) does not exist or fabricated the information provided; (2) did not provide the Wilmington Police with the information they have said was provided or falsely provided that information; and (3) that the informant fabricated that information or that his existence was in fact created by officers of the Wilmington Police in order to provide additional support for a search warrant that was not supported by probable cause.

The credibility and possible non-existence of this informant(s) and the circumstances surrounding how the informant(s) allegedly obtained this knowledge, is a key component to the validity of the search warrant executed, as well as the constitutionality of that search.

The defense has contemporaneously filed a motion to force the government to reveal the identity and related information of the confidential informant who allegedly provided the Wilmington Police with the probable cause in support of the search warrant. If this court does not order the government to reveal the identity of that informant, it should order suppression of the evidence seized during the execution of the search warrant .

WHEREFORE, defendant requests this Court to hold a hearing pursuant to Franks v. Delaware, concerning the presence of false statements and/or omissions in

the affidavit of probable cause supporting a warrant for the search of the premises in

question known as 204 N. West Street, Apartment D, Wilmington, Delaware,  and,

after such a hearing, enter an Order suppressing any physical evidence and

statements.

Respectfully Submitted,

Peter A. Levin
Attorney for the Defendant
1927 Hamilton Street
Philadelphia, PA  19130
(215) 563-3454

4

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

**UNITED STATES OF AMERICA**

**V.**

**CRIMINAL NO. 05-100-SLR**

**BURTRAN MARSHALL**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

The Fourth Amendment to the United States Constitution states that, "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizure shall not be violated, and no warrant shall issue without probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons and things to be seized." U.S. Const. Amend. IV "Physical entry of the home is the chief evil against which the wording of the fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379 (1980). "At the very core [of the Fourth Amendment] stands the right of a man to retreat to his own home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679 (1961). The right to "sanctity of private dwellings" has been held to be the right "ordinarily afforded the most stringent Fourth Amendment protection." United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074 (1976).

5

The proceeding by search warrant is a drastic one." Sgro v. United States, 387 U.S. 206, 210, 53 S.Ct. 138, 140 (1932). "Its abuse led to adoption of the Fourth Amendment and this, together with legislation regulating the process, should be liberally construed in favor of the defendant." Id. "Proceeding by search warrant....must be carefully exercised so as to prevent unauthorized invasion of the sanctity of a man's home...." Berger v. New York, 388 U.S. 41, 58, 187 S.Ct. 1873, 1883 (1967).

"Dealing with probable cause, as the very name applies, we deal with probabilities." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302 (1949). "Probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warn a man of reasonable caution to believe that an offense has been committed." Berger v. New York, 388 U.S. at 55, 87 S.Ct. at 1881. Of course, an affidavit for a search warrant must also establish a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 108 S.Ct. 2317, 2332 (1993). In deciding whether a search warrant is supported by probably cause, the courts must use the totality of the circumstances standard. Id., 426 U.S. at 241, 103 S.Ct. at 2334. "[W]arrant application must demonstrate probable cause to believe that a particular person has committed a crime-'the commission element'- and that enumerated evidence relevant to the problem of criminality is likely to be located at the place to be searched- the 'nexus element'."

6

United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (First Cir. 1996).

The protections afforded by the requirements of the Fourth Amendments apply to the states as equally as they do to the federal government. Map v. Ohio, 367 U.S. 643, 655-56, 81 S.Ct. 6084 (1961). After the search warrant has been issued and has been challenged, a review in court must determine whether there was a "substantial basis" to conclude that probable cause existed. United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993)(quoting Illinois v. Gates, 462 U.S. at 238-239). The Court must ask whether the circumstances set forth in the four corners of the affidavit indicate a fair probability that evidence of a crime would be found at the target location or on the target person. See Illinois v. Gates, 462 U.S. at 238; see also United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). The basis must be a factual one. It cannot be found upon mere conclusory statements provided by the affiant. See Illinois v. Gates, 462 U.S. at 239. While the court should not conduct its own de novo review of the affidavit to determine whether it was supported by probable cause. United States v. Williams, 3 F.3d 69, 73 (3d Cir. 1992) (citing Gates), neither should the court blindly approve a warrant simply because a magistrate, or Court of Common Pleas judge as in this case, signed it. See United States v. Lloyd, 191 F.3d 360, 365 (3d Cir. 1999).

In the present case, the affidavit is significantly absent of specific facts reflecting the involvement of Defendant Marshall in narcotic sales . Further, even if this Court were to find that Defendant was involved in drug transactions, the affidavit is lacking in specific factual details to support the showing of probable cause that the property located at 204 N. West Street, Apartment D, Wilmington, Delaware, was involved in the

7

alleged drug sales or evidence of the criminal activity alleged would be found there.

Among the problems with the affidavit are the following factors:

- The affiants appeared before the Justice of the Peace on June 5, 2003. (p.39)
- The affiants state they spoke with the CI during the second week of June 2003. (one week after the warrant was prepared) (p. 41)
- There is no information in the affidavit about the informant's credibility and reliability.
- The affiants state they spoke with a confidential informant during the first week of August 2003. . (two months after the warrant was prepared) (p.41)
- There is no information as to whether the informant of August 2003 is the same informant as June 2003.
- There is no information in the affidavit about the August 2003 informant's credibility and reliability.
- The August 2003 informant states that "they" responded to a location to meet defendant. There is no explanation in the warrant as to who the other person or persons were. (p.42)
- Nothing in the affidavit indicates that officers observed the alleged transaction of August 2003 although according to the affidavit the officers were present.
- No specific date is given for the August 2003 transaction.
- Detective Liam Sullivan gives information to the affiants during the third week of June 2003 which was given to him by an informant. There is no information given

8

in the affidavit regarding that informant's credibility and reliability other than a blanket statement that the informant was reliable.

- The affidavit states that during the first week of October 2003, another informant appeared on the scene. There is no information given in the affidavit regarding that informant's credibility and reliability. Furthermore, this is some four months after the affidavit was prepared (page 44).

- The affiants then state they stopped defendant knowing that his drivers license was suspended and that there were warrants out for him. They never stated anything about the alleged drug sales with the informant (page 45).

- The affiants took keys from defendant after he was placed in custody and went to the residence at 204 N. West Street, Apartment D, Wilmington, Delaware (page 45).

- They entered the premises without a warrant finding that the keys fit (page 45).

- They then applied for a search warrant (page 45).

- The warrant was served on October 14, 2003 some four months after being prepared and/or some four months after information was received concerning the premises.

    The affidavit is remarkable in its absence of any of the information pointing to residence's involvement in the alleged criminal activity except for unsubstantiated comments by an alleged informant.. The defendant is not observed participating in any obvious narcotics transactions by the investigating police officers that can link him to the premises. Being stopped by the police for a suspended license and outstanding

9

warrants does not give the police the right to take an individuals keys and proceed to a residence thought to be that of the individual's.

The officers' conclusory comments that their observation was consistent with narcotics activity observed prior to and during narcotics transactions between one of the informants and defendant does not provide probable cause when evidence of criminal activity is lacking. Conclusory statements of the affiant based on his experience cannot serve as a substitute for a demonstration of probable cause and the factual recitations of the affidavit. See United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994) ("While an office's training and experience may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus in the case, prior to the search, between the place to be searched and any criminal activity.") see also United States v. Neumann, 685 F.2d 90, 92 (3d Cir. 1982)..

There is no proof that the premises was in some manner connected to the alleged activity of the defendant The affidavit falls far short of providing sufficient evidence that the defendant employed 204 N. West Street, Apartment D, Wilmington, Delaware as a residence. An additional location was given in the affidavit that defendant had keys to and was seen entering and leaving. (1615 W. 4th Street). Although he is observed for very brief periods of time entering and exiting the property, it is hardly sufficient to show that he was using that house as a residence. The affidavit fails to supply sufficient evidence to demonstrate a nexus between the alleged criminal activity and the address that was to be searched. See Greenstreet v. County of San Bernadino, 41 F.3d 1306, (9th Cir. 1994) and

10

United States v. Stoudt, 641 F.Supp. 1074 (N.D.C.A. 1986).

Finally, the good faith exception to the warrant requirement provides that evidence that is obtained from an invalidated search warrant will be suppressed where officers were dishonest or reckless when preparing an affidavit or where officers could not have harbored an objectively reasonable belief in the existence of probable cause.

United States v. Leon, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422 (1984).  The good faith exception does not apply to the case before this Court because there was no evidence to establish even a fair probability that the contraband of the crimes being investigated would be found at the location.  The affidavit is so lacking in regard to Defendant Marshall and 204 N. West Street, Apartment D, Wilmington, Delaware that no reasonable agent could have relied upon it.  Had the officers exercised reasonable, professional judgment, they would have realized that there was no probable cause for issuance of a warrant.

II.    Additional grounds for a Franks v. Delaware Hearing

Defendant asserts that a Franks hearing is necessary to challenge the credibility of various reports of drug property collected purchased or seized.  The dollar amounts, the gross quantity seized and the remarks section of the seizures from the defendant are totally contradictory and appear to be fabricated.  Furthermore, one of the items of narcotics attributed to defendant bears the name of another individual, Artega Green.  Also most curiously, the reports for the seizures were not prepared until

11

April 13, 2005 some two years after the alleged transactions and seizures.

True and correct copies of the above reports produced by the Government as discovery attached hereto as Exhibit "B".

Defendant asserts that the affidavit contains knowing, intentional and reckless false statements to buttress probable cause. "Where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary in the finding of probable cause, the Fourth Amendment requires that a hearing be held at the Defendant's request. "Thus, to the extent that the statements in the affidavit are purported to reflect actual conduct by Defendant as opposed to conclusory comments by the affiant, and to the extent that those statements are necessary for the finding of probable cause, the Defendant asserts that the Fourth Amendment requires that a hearing be held on this matter.

Furthermore as stated in Defendant's Motion to Disclose the Confidential Informant , the defendant believes that the confidential informant referred to in the affidavits in support of the search warrant: (1) does not exist or fabricated the information provided; (2) did not provide the Wilmington Police with the information they have said was provided or falsely provided that information; and (3) that the informant fabricated that information or that his existence was in fact created by officers of the Wilmington Police in order to provide additional support for a search warrant that was not supported by probable cause.

Therefore, the search warrant issued on the basis of CI 's alleged first hand

12

knowledge was not supported by probable cause. Because the search warrant executed against the premises was not supported by probable cause, the search of that residence was committed in violation of the Fourth Amendment to the United States Constitution, and the court should suppress all fruits of that unlawful search. Any statements or evidence procured as a result of that unlawful search should be considered the tainted fruits of that illegal search. Accordingly, any such statements or evidence must be suppressed. See Taylor v. Alabama, 457 U.S. 687 (1982); Dunaway v. New York, 442 U.S. 200, 220 (1979); Wong Sun v. United States, 371 U.S. 471 (1963).

The police officers executing that search warrant could not have reasonably relied on the warrant as a legitimate and validly issued search warrant, because the confidential informant or informants who allegedly provided them with the probable cause for the warrant did not actually exist. United States v Leon, 468 U.S. 897, 918-22, 104 S.Ct. 3405, 3418-19 (1984) (if police reasonably believe in good faith that the warrant is valid and relied on such warrant, the exclusionary rule will not apply to the items seized even if the warrant was found to be unsupported by probable cause). As the Supreme Court held in United States v. Leon, suppression is the appropriate remedy if the magistrate was misled by information in an affidavit that the affiant knew or should have known was false. 468 U.S. at 923, 104 S.Ct. at 3421.

WHEREFORE, in consideration of the foregoing, Burtran Marshall respectfully requests that this Honorable Court grant the instant motion, and order suppression of all evidence discovered during the search of 204 N. West Street, Apartment D,

13

Wilmington, Delaware, on October 14, 2003, as well as any statements made by

defendant or other evidence resulting from that search.

Respectfully Submitted,

Peter A. Levin
Attorney for the Defendant
1927 Hamilton Street
Philadelphia, PA 19130
(215) 563-3454

14

# APPENDIX A

## IN THE JUSTICE OF THE PEACE COURT
## STATE OF DELAWARE
## COURT# 20

**IN MATTER OF:**                                          **Affidavit & Application**

**1)THE ENTIRE RESIDENCE AND ALL CURTLIDGES KNOWN AS 204 N. WEST ST. APARTMENT D WILMINGTON, DELAWARE.**

**2) BURTRAN K. MARSHALL BM 03/01/1977 A.K.A. BURT**

**3) CANDICE D. LOPER BF 07/27/1982**

**4) ARTEGA L. GREEN BM 01/11/1978  A.K.A. ARTIE**

STATE OF DELAWARE
NEW CASTLE COUNTY SS

Be it remembered that on this 5ᵗʰ day of June, A.D. 2003, before me Judge
_____ of Justice of the Peace Court #20, State of Delaware,
personally appeared **Detectives Thomas Looney and Vincent Jordan** of the
Wilmington Police Department, who being by me duly sworn( or affirmed) deposes(or
depose) and says (or say):

That the affiant(or affiants) has (or have) reason to believe and does (or do) believe that
in the residence known as:  204 N. WEST ST. APT. D WILMINGTON, DE. Which is
owned or occupied by BURTRAN K. MARSHALL, CANDICE D. LOPER OR
ARTEGA L. GREEN
there has been and/or there is now located and /or concealed certain property in said
house, place, conveyance and/or on the person or persons of the occupants thereof,
consisting of property, papers, articles or things which are instruments of a criminal
offense, and/or obtained in the commission of a crime, and/or designated to be used in the
commission of a crime, and not reasonably calculated to be used for any other purpose
and/or the possession of which is unlawful and, in particular, SCHEDULE II
NARCOTICS *( COCAINE )  **and any drug related paraphernalia commonly used to
process, package, and/or consume drugs,**  which said property, papers, articles or
things were, are or will be possessed and /or used in violation of **Title 16, Section  4751 ,
Delaware Code, in that**
And that the facts tending to establish probable cause for believing that the foregoing
grounds for the application exist are as follows:

**PROPERTY TO BE SEIZED**:

1. ANY COCAINE AND RELATED PARAPHERNALIA INCLUDING, BUT NOT LIMITED TO, PACKAGING MATERIALS, SCALES AND PIPES.

2. INDICIA OF OCCUPANCY OR RESIDENCY OF THE DESCRIBED PREMISES, INCLUDING, BUT NOT LIMITED TO , UTILITY AND TELEPHONE BILLS, CANCELLED ENVELOPES AND KEYS.

3. BOOKS, RECORDS, RECEIPTS, NOTES, LEDGERS AND OTHER PAPERS RELATING TO THE TRANSPORTATION, ORDERING, PURCHASE AND DISTRIBUTION OF COCAINE INCLUDING ADDRESSES AND/OR TELEPHONE NUMBERS OF INDIVIDUALS ASSOCIATED IN THE DRUG TRAFFICKING OPERATION.

4. ANY DOCUMENTS, RECEIPTS, TICKETS OR OTHER PAPERS REFLECTING OR EVIDENCING TRAVEL BY ANY MEANS IN FURTHERANCE OF THE DRUG TRAFFICKING ENTERPRISE BETWEEN THE STATES OF DELAWARE AND OTHER STATES.

5. BOOKS, RECORDS, RECEIPTS, BANK STATEMENTS AND RECORDS, MONEY DRAFTS, LETTERS OF CREDIT, CASHIER'S CHECKS RECEIPTS, PASSBOOKS, BANK CHECKS, SAFETY DEPOSIT KEYS, LOAN DOCUMENTS, WIRE TRANSFERS AND OTHER PAPERS OR DOCUMENTS EVIDENCING THE OBTAINING, SECRETING, TRANSFER, LAUNDERING AND INVESTMENT, AND/OR CONCEALMENT OF ANY ASSETS OR MONIES OBTAINED DIRECTLY OR INDIRECTLY FROM VIOLATIONS OF THE CONTROLLED SUBSTANCES LAWS.

6. ANY UNITED STATES CURRENCY IN CLOSE PROXIMITY TO COCAINE OR COCAINE PARAPHERNALIA, OR ANY QUANTITIES OF CURRENCY IN EXCESS OF $100.00 OR OTHER VALUABLES FOUND IN EXCESS SUCH AS MULTIPLE VCR'S, CAMERA AND/OR STEREO EQUIPMENT THAT MAY HAVE USED IN LIEU OF CURRENCY TO ATTAIN CONTROLLED SUBSTANCES.

7. ANY RIFLE, PISTOL, SHOTGUN OR ANY DEVICE THAT A SHOT MAY BE DISCHARGED OR ANY WEAPON MANIFESTLY UTILIZED TO PROTECT ILLEGAL DRUGS.

### PROBABLE CAUSE

1.    THAT YOUR AFFIANTS CAN STATE THAT THEY ARE THOMAS LOONEY & VINCENT JORDAN . BOTH ARE SWORN MEMBERS OF THE WILMINGTON POLICE DEPARTMENT, WILMINGTON, DELAWARE. BOTH ARE CURRENTLY ASSIGNED TO THE DRUG, ORGANIZED CRIME AND VICE SQUAD AS DETECTIVES AND HAVE A COMBINED TOTAL OF OVER (28) YEARS POLICE EXPERIENCE AND A COMBINED TOTAL OF (13) YEARS OF INVESTIGATIVE EXPERINCE. YOUR AFFIANTS HAVE ATTENDED NUMEROUS SCHOOLS AND SEMINARS SPECIFICALLY DEALING WITH NARCOTICS INVESTIGATIONS INCLUDING IDENTIFICATION OF CONTROLLED SUBSTANCES AS WELL AS INVESTIGATIVE TECHNIQUES FOR DEALING WITH NARCOTICS TRAFFICKERS. YOUR AFFIANTS HAVE ALSO AUTHORED AND/OR CO-AUTHORED OVER (100) ONE HUNDRED SEARCH WARRANTS.

2.    THAT YOUR AFFIANTS CAN STATE THAT DURING THE SECOND WEEK OF JUNE 2003, YOUR AFFIANTS SPOKE WITH A CONFIDENTIAL INFORMANT *(HEREAFTER KNOWN AS C.I. ) IN REGARDS TO ILLEGAL DRUG DISTRIBUTION WITHIN THE CITY OF WILMINGTON, DE.

THE C.I. STATED THAT A BM BY THE NAME OF BURTRAN "BURT" MARSHALL WAS KEEPING AND DISTRIBUTING LARGE AMOUNTS OF COCAINE FROM AN APARTMENT INSIDE OF 204 N. WEST ST. IN WILMINGTON, DE.

YOUR AFFIANTS WERE FAMILIAR WITH BURTRAN MARSHALL FROM PREVIOUS DRUG INVESTIGATIONS.

THE C.I. WAS THEN IDENTIFIED A PHOTO OF ONE BURTRAN K. MARSHALL D.O.B. OF 03/01/1977 AS BEING THE BURTAN "BURT" MARSHALL THAT WAS KEEPING AND DISTRIBUTING LARGE AMOUNTS OF COCAINE FROM AN APARTMENT WITHIN 204 N. WEST ST. IN WILMINGTON

3)    THAT YOUR AFFIANTS CAN STAE THAT, DURING THE FIRST WEEK OF AUGUST 2003, YOUR AFFIANTS MET WITH A CONFIDENTIAL INFORMANT *(HEREAFTER KNOWN AS C.I. ) IN AN ATTEMPT TO PURCHASE COCAINE FORM BURTRAN MARSHALL AT 204 N. WEST ST. IN WILMINGTON, DE.

4)   THE C.I. THEN AGRED TO ATTEMPT THE CONTROLLED PURCHASE AND WAS THEN SEARCHED FOR ANY CONTRABAND. THE SEARCH HAD NEGATIVE RESULTS AT WHICH TIME THE C.I. WAS SUPPLIED WITH DEPARTMENTAL BUY MONEY AND TOLD TO CONTACT MARSHALL BUY WAY OF A CELL PHONE NUMBER. THE C.I. THEN CONTACTED BURTRAN MARSHALL BY WAY OF SAID CELL PHONE AND ASKED FOR A SPECIFIC AMOUNT OF COCAINE. THE C.I. WS THEN DIRECTED TO A SPECIFIC LOCATION. THE C.I. WAS THEN FOLLOWED TO A SPECIFIC LOCATION GIVEN BY BURTRAN MARSHALL.

THESE OFFICERS OBSERVED ONE BURTRAN MARSHALL ARRIVE AT 204 N. WEST ST. AND ENTERE THE FRONT DOOR OF SAME BY USING A KEY. BURTRAN MARSHALL EXITED SAID LOCATION A SHORT TIME LATER AND ENTERED A BLUE IN COLOR CADDILAC DE. 726770 AND RESPONDED TO MEET WITH THE C.I. MARSHALL AND THE C.I. THEN HAD A SHORT MEETING . MARSHALL THEN LEFT THE AREA IN SAID CADILLAC DE. 726770 , WHILE THE C.I. LEFT SAID LOCATION AND WAS FOLLOWED BACK TO THE PREDETERMINED MEET LOCATION.

BURTRAN MARSHALL WAS FOLLOWED TO A RESIDENCE AT 1615 W. 4TH ST. IN WILMINGTON, DE. WHERE HE WAS OBSERVED ENTERING SAID LOCATION BY USING A KEY. *( POSSIBLE STASH HOUSE FOR MONEY ).

YOUR AFFIANTS THEN DEBRIEFED THE C.I. AT WHICH TIME THE C.I. STATED THAT (THEY )RESPONDED TO THE LOCATION THAT BURTRAN MARSHALL HAD CHOSSEN AND AWAITED SAME. THE C.I. STATED THAT BURTRAN MARSHALL ARRIVED AT THE CHOOSEN LOCATION A SHORT TIME LATER AND HANDED OVER A SINGLE SANDWHICH BAG OF COCAINE IN EXCHANGE FOR THE DEPARTMENTAL BUY MONEY.

THE C.I. STATED THAT BURTRAN MARSHALL LEFT THE AREA IN A DARK BLUE CADDILAC WHILE THEY HEADED BACK TO THE PREDETERMINED MET LOCATION.

BURTRAN MARSHALL WAS OBSERVED EXITING THE RESIDENCE AT 1615 W. 4TH ST. A SHORT TIME LATER AND RESPONDEING TO A CITY PARK IN THE 600 BLK. OF N. MADISON ST.

YOUR AFFIANTS TOOK POSSESSION OF THE CLEAR PLASTIC SANDWHICH BAG AND IT'S WHITE CHUNKY SUBSTANCE AND CONDUCTED A FIELD TEST ON SAME. THE SUBSTANCE HAD A PRELIMINARY POSITIVE REACTION FOR COCAINE. THE ABOVE MENTIONED DRUGS WERE THEN TAGGED AS EVIDENCE.

5) THAT YOUR AFFIANTS CAN STAE THAT , DURING THE THIRD WEEK OF AUGUST 2003, YOUR AFFIANTS SPOKE WITH ONE DETECTIVE LIAM SULLIVAN OF THE WILMINGTON POLICE DEPARTMENT *( F.B.I. TASK FORCE ).

DETECTIVE SULLIVAN STATED THAT HE HAD SPOKEN TO A PAST PROVEN AND RELIABLE INFORMANT IN REGARDS TO ILLEGAL DRUG DISTRIBUTION WITHIN THE CITY OF WILMINGTON.

THE C.I. INFORMED DETECTIVE SULLIVAN THAT BURTRAN MARSHALL AND ARTEGA GREEN WERE PARTNERS IN A LARGE COCAINE DISTRIBUTION RING IN THE CITY OF WILMINGTON. THE C.I. FURTHER STATED THAT MARSHALL AND GREEN WERE KEEPING, COOKING AND SELLING COCAINE FROM 204 N. WEST ST. APT. D IN WILMINGTON, DE.

THE INFORMANT STATED THAT THE APARTMENT BELONGED TO ONE LARRY LOPER WHO WAS NOW IN JAIL. THE C.I. STATED THAT LOOPER'S SISTER CANDICE LOOPER WAS NOW LIVING AT SAID LOCATION AND WAS ALLOWING MARSHALL AND GREEN TO OPERATE THEIR DRUG BUSINESS OUT OF SAID RESIDENCE. THE C.I. FURTHER STATED THAT THEY HAD PERSONALLY BEEN INSIDE OF SAID APARTMENT AND OBSERVED MARSHALL AND GREEN HANDELING, PACKAGING AND COOKING COCAINE.

THE INFORMANT ALSO STATED THAT GREEN IS OFTEN CALLED "THE CHEF" FOR HIS COCAINE COOKING ABILATIES.

6) THAT YOUR AFFIANTS CAN STATE THAT, A COMPUTER CHECK WAS CONDUCTED AND AN INDAVIDUAL BY THE NAME OF LARRY LOPER WAS CURRENTLY IN PRISON SERVING A SENTENCE.

7) THAT YOUR AFFIANTS CAN STATE THAT, A COMPUTER CHECK WAS CONDUCTED AND A DRIVERS LICENSE FOR ONE CANDICE D. LOPER DE. 1277625 WAS LOCATED. THE HOME ADDRESS FOR CANDICE D. LOPER WAS 204 WEST ST. APT. D, IN WILMINGTON, DE.

8) THAT YOUR AFFIANTS CAN STATE THAT, CONECTIV POWER COMPANY SECURITY DIVISION WAS CONTACTED IN REGARDS TO THE UTILITIES FOR 204 WEST ST. APT. D IN WILMINGTON, DE.

THE CONTACT PERSON FOR CONECTIV STATED THAT THE UTILITIES FOR 204 WEST ST. APT. D IN WILM, DE. WERE IN THE NAME OF ONE LARRY LOPER AND HAD BEEN SO SINCE 2001.

8) CONTINUED:   THE CONTACT PERSON FOR CONECTIV STATED THAT LARRY LOPER HAD SUPPLIED THEN WITH A S.S.N. OF 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.

THE CONTACT PERSON ALSO ADVISED THESE AFFIANTS OF A FEMALE *( IDENTIFIED HERSELF AS MS. LOPER ) HAD INQUIRED ABOUT THE ACCOUNT BACK IN 2002.

9) THAT YOUR AFFIANTS CAN STATE THAT A CRIMINAL HISTORY CHECK WAS CONDUCTED ON ONE LARRY LOPER 03/30/1978. THESE OFICERS THEN FOUND THAT THE ABOVE ( SENTENCED INMATE ) LARRY LOPER HAD A S.S.N. OF 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 WHICH WAS IDENTICAL TO THE LARRY LOPER WHO HAD THE UTILITIES FOR 204 WEST ST. APT. D. IN WILM, DE.

10) ) )   THAT YOUR AFFIANTS CAN STAE THAT, DURING THE FIRST WEEK OF OCTOBER 2003, YOUR AFFIANTS MET WITH A CONFIDENTIAL INFORMANT *(HEREAFTER KNOWN AS C.I. ) IN AN ATTEMPT TO PURCHASE COCAINE FORM BURTRAN MARSHALL AT 204 N. WEST ST. IN WILMINGTON, DE.

THE C.I. THEN AGRED TO ATTEMPT THE CONTROLLED PURCHASE AND WAS THEN SEARCHED FOR ANY CONTRABAND. THE SEARCH HAD NEGATIVE RESULTS AT WHICH TIME THE C.I. WAS SUPPLIED WITH DEPARTMENTAL BUY MONEY AND TOLD TO CONTACT MARSHALL BUY WAY OF A CELL PHONE NUMBER. THE C.I. THEN CONTACTED BURTRAN MARSHALL BY WAY OF SAID CELL PHONE AND ASKED FOR A SPECIFIC AMOUNT OF COCAINE. THE C.I. WS THEN DIRECTED TO A SPECIFIC LOCATION. THE C.I. WAS THEN FOLLOWED TO A SPECIFIC LOCATION GIVEN BY BURTRAN MARSHALL.

THESE OFFICERS OBSERVED ONE BURTRAN MARSHALL ARRIVE AT 204 N. WEST ST. AND ENTER THE FRONT DOOR OF SAME BY USING A KEY. BURTRAN MARSHALL EXITED SAID LOCATION A SHORT TIME LATER AND ENTERED A GREY IN COLOR FORD CROWN VICTORIA BEARING PA. FHG8509 AND RESPONDED TO MEET WITH THE C.I. MARSHALL AND THE C.I. THEN HAD A SHORT MEETING . MARSHALL THEN LEFT THE AREA IN SAID CROWN VICTORIA PA. FHG8509 WHILE THE C.I. LEFT SAID LOCATION AND WAS FOLLOWED BACK TO THE PREDETERMINED MEET LOCATION.

10) CONTINUED: YOUR AFFIANTS THEN DEBRIEFED THE C.I. AT WHICH TIME THE C.I. STATED THAT THEY RESPONDED TO THE LOCATION THAT BURTRAN MARSHALL HAD CHOSSEN AND AWAITED SAME. THE C.I. STATED THAT BURTRAN MARSHALL ARRIVED AT THE CHOOSEN LOCATION A SHORT TIME LATER AND HANDED OVER A SINGLE SANDWHICH BAG OF COCAINE IN EXCHANGE FOR THE DEPARTMENTAL BUY MONEY.

11) THAT YOUR AFFIANTS CAN STATE THAT ON 14 OCT 2003, BURTRAN MARSHALL WAS OBSERVED OPERATING A GREY IN COLOR CROWN VICTORIA BEARING PA. FHG8509.

YOUR AFFIANTS WERE WELL AWARE THAT MARSHALL'S DRIVERS LICENSE WAS CURRENTLY SUSPENDED AND THAT HE WAS WANTED ON SEVERAL OUTSTANDING WARRANTS.

MARSHALL WAS THEN FOLLOWED AS HE PICKED UP AN UNKNOWN BM IN THE 300 BLK. OF PORTER ST. IN WILMINGTON, DE. MARSHALL AND THE UNK. BM THEN DROVE AROUND THE ABOVE AREA . THE UNK. BM THEN EXITED THE VEHICLE A SHJORT TINME LATER AND WAS LAST SEEN ENTERING A NEARBY ALLLEY WAY. YOUR AFFIANTS ARE FAMILIAR WITH DRUG DEALERS WHO OFTEN CONDUCT THEIR DRUG TRANSACTIONS WITHIN THEIR VEHICLES AS THEY DRIVE SAME IN AN ATTEMPT TO KEEP SAME OUT OF THE PUBLIC EYE AND TO AVOID ARREST.

YOUR AFFIANTS WERE NOT ABLE TO LOCATE THE UNK. BM THAT HAD EXITED THE VEHICLE AND CONDUCTED A MOTOR VEHICLE STOP ON MARSHALL'S VEHICLE.

MARSHALL WAS OBSERVED MAKING A QUICK PHONE CALL AS OFFICERS APPROACHED SAID VEHICLE. MARSHALL WAS THEN PLACED INTO CUSTODY AND ADVISED HE WAS UNDER ARREST . MARSHALL THEN ATTEMPTED TO GIVE THE NAME OF MIKE TO YOUR AFFIANTS. MARSHALL ALSO SMELLED OF MARIJUANA. DETECTIVE LOONEY THEN OBSERVED 5 SMALL BLUE BAGS OF MARIJUANA IN THE DRIVERS SIDE DOOR POCKET.

THESE OFFICERS THEN TOOK POSSESSION OF MARSHALL'S KEYS AND RESPONDED TO 204 WEST ST. APT. D IN WILM, DE. THE KEYS LOCATED IN MARSHALL'S POSSESSION WERE FOUND TO FIT THE LOCKS AT SAID RESIDENCE.

YOUR AFFIANTS THEN APPLIED FOR A JUSTICE OF THE PEACE COURT 20 SEARCH WARRANT FOR THE ABOVE MENTIONED LOCATION.

10.) BASED UPON YOUR AFFIANTS TRAINING, EXPERIENCE AND PARTICIPATION IN OTHER DRUG INVESTIGATIONS, YOUR AFFIANTS CAN STATE:

A. THAT DRUG TRAFFICKERS VERY OFTEN PLACE ASSETS IN NAMES OTHER THAN THEIR OWN TO AVOID DETECTION OF THESE ASSETS BY GOVERNMENT AGENCIES AND EVEN THOUGH THESE ASSETS ARE IN OTHER PERSON'S NAMES, THE DRUG TRAFFICKER ACTUALLY OWN AND CONTINUE TO USE THESE ASSETS AND EXERCISE DOMINION AND CONTROL OVER THEM;

B. THAT DRUG TRAFFICKERS MUST MAINTAIN ON HAND, LARGE AMOUNTS OF U.S. CURRENCY IN ORDER TO MAINTAIN AND FINANCE THEIR ON-GOING NARCOTICS BUSINESS;

C. THAT DRUG TRAFFICKERS MUST MAINTAIN ON HAND, LARGE AMOUNTS OF U.S. CURRENCY IN ORDER TO MAINTAIN AND FINANCE THEIR ON-GOING NARCOTICS BUSINESS.

D. THAT IT IS COMMON FOR DRUG TRAFFICKERS TO SECRETE CONTRABAND, PROCEEDS OF DRUG SALES AND RECORDS OF DRUG TRANSACTIONS IN SECURE LOCATIONS WITHIN THEIR RESIDENCE AND/OR BUSINESSES FOR THEIR READY ACCESS AND TO CONCEAL FROM LAW ENFORCEMENT OFFICERS;

E. THAT WHEN DRUG TRAFFICKERS AMASS LARGE PROCEEDS FROM THE SALE OF DRUGS, THE DRUG TRAFFICKERS ATTEMPT TO LEGITIMIZE THESE PROFITS. TO DO THIS DRUG TRAFFICKERS UTILIZE DOMESTIC BANKS AND THEIR ATTENDANT SERVICES, SECURITIES, CASHIER CHECKS, MONEY DRAFTS, LETTERS OF CREDIT, REAL ESTATE AND BUSINESS FRONTS.

F. THAT DRUG TRAFFICKERS COMMONLY MAINTAIN ADDRESSES AND/OR TELEPHONE NUMBERS IN BOOKS OR PAPERS THAT REFLECT PERSONS ASSOCIATED IN DRUG TRAFFICKING AND/OR DISTRIBUTION ORGANIZATIONS;

G. THAT DRUG TRAFFICKERS OFTEN TAKE PAYMENT IN THE FORM OF STOLEN ITEMS SUCH AS TELEVISIONS, STEREOS, VCR'S, GUNS AND/OR CAMERA EQUIPMENT AND/OR THEY OBTAIN THESE ITEMS LEGITIMATELY WITH DRUG PROFITS;

H. THAT YOUR AFFIANTS ARE AWARE THAT COURTS HAVE RECOGNIZED THAT UNEXPLAINED WEALTH IS PROBATIVE EVIDENCE OF CRIMES MOTIVATED BY GREED, IN PARTICULAR, TRAFFICKING IN CONTROLLED SUBSTANCES;

I. THAT YOUR AFFIANTS CAN STATE THAT DRUG TRAFFICKERS ONLY TRANSPORT ENOUGH DRUGS THT THEY WILL NEED FOR THE SALE. THEY WILL MAINTAIN THE OTHER DRUGS AT A SECURED LOCATION, INCLUDING BUT NOT LIMITED THEIR RESIDENCE.

11. THAT YOUR AFFIANTS PRAY THAT A DAYTIME SEARCH WARRANT BE AUTHORIZED FOR A SEARCH OF:

1) THE ENTIRE RESIDENCE AND ALL CURTLIGES KNOWN AS 204 N. WEST ST. APT. D WILMINGTON, DE.

2) BURTRAN K. MARSHALL BM 03/01/1977 A.K.A. BURT

3) CANDICE D. LOPER BF 07/27/1982

4) ARTEGA L. GREEN BM 01/11/1978 A.K.A. ARTIE

12. SWORN AND DESCRIBED ON THE 14th OF OCTOBER , 2003.

**AFFIANT:** _____  **DATE:** 14 oct 03
VINCENT JORDAN

**AFFIANT:** _____ 6633  **DATE:** 14 oct 03
THOMAS LOONEY

JUDGE JUSTICE OF THE PEACE COURT#20
STATE OF DELAWARE
NEW CASTLE COUNTY

0047

# APPENDIX B

**U.S. Department of Justice**
**Drug Enforcement Administration**

Read instructions on Reverse
before completing

## REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

| 1. HOW OBTAINED (Check) | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|
| [X] Purchase  [ ] Seizure  [ ] Free Sample | | | | |
| [ ] Lab. Seizure  [ ] Money Flashed  [ ] Compliance Sample (Non-Criminal) | | | | |
| [ ] Internal Body Carry  [ ] Other (Specify) | | | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Wilmington, Delaware | 04-13-2005 | |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | | |
|---|---|---|---|
| Wilmington Police Department | [X] Case No. OR [ ] Seizure No. No. 30-03-78368 | 7. DATE PREPARED 04-13-2005 | 8. GROUP NO. Wilmington, DE. R.O. |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| # 23 | N/A | Crack Cocaine | An off white rock substance | 80.3 gross | 80.3 gross | $800.00 |
| | | | contained in a clear, | grams | grams | |
| | | | knotted, plastic bag; | | | |
| | | | purported crack cocaine. | | | |
| | | | | | | |
| | | | Note: Wilmington Police | | | |
| | | | Department Manilla | | | |
| | | | Evidence Envelope is also | | | |
| | | | contained within. | | | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?  [X] NO (included above)  [ ] YES (if Yes, enter exhibit no. and describe original container fully)

**REMARKS:**
On 08/04/03, the Wilmington Police Department Vice Unit conducted a Confidential Source Buy-Walk Operation where a controlled purchase of approximately (1) ounce of crack cocaine was purchased from Burtran MARSHALL. On 04/12/05, Detective Tom Looney relinquished Exhibit #23 to S/A David B. Hughes. S/A Hughes field-tested and processed Exhibit #23 into evidence as witnessed by TFO Lawrence R. Collins. S/A Hughes placed Exhibit #23 into the W.R.O. Drug Evidence Room for safekeeping as witnessed by S/A Mark T. McHugh. Exhibit #23 will be maintained pending transfer to the NERL. Registered return receipt requested.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| S/A David B. Hughes | RAC Timothy F. Bucher |

### LABORATORY EVIDENCE RECEIPT REPORT

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| | | |
| 22. SEAL [ ] Broken [X] Unbroken | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |
| 05/27/05 | pm | |

### LABORATORY REPORT

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #23 contains cocaine base

Gross Wt. = 81.2 g
Net Wt. = 18.8 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 23 | 172360 | cocaine base | 61 | % | | 11.4 g | 18.1 g |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| MICHELLE G. CAMILLERI | SENIOR FORENSIC CHEMIST | 05/26/05 |
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
| THOMAS M. BLACKWELL | LABORATORY DIRECTOR | NEW YORK |

DEA Form - 7
Sept. 1995)

0001

dated 4/90 may be used until stock is exhausted.

2 - Orig. Office

U.S. Department of Justice
Drug Enforcement Administration

Read Instructions on Reverse before completing.

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) | | | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|---|---|
| ☐ Purchase  ☒ Seizure  ☐ Free Sample | | | | | | |
| ☐ Lab. Seizure  ☐ Money Flashed  ☐ Compliance Sample (Non-Criminal) | | | | | | |
| ☐ Internal Body Carry  ☐ Other (Specify) | | | | | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE | | |
|---|---|---|---|---|
| Wilmington, Delaware | 04-13-2005 | | | |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | 7. DATE PREPARED | 8. GROUP NO. |
|---|---|---|---|
| Wilmington Police Department | ☒ Case No. OR ☐ Seizure No.  No. 30-03-78368 | 04-13-2005 | Wilmington, DE. R.O. |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| # 24 | N/A | Crack Cocaine | An off white rock substance | 78.2 gross | 78.2 gross | N/A |
| | | | contained in a clear, | grams | grams | |
| | | | knotted, plastic bag; | | | |
| | | | purported crack cocaine. | | | |
| | | | | | | |
| | | | Note: Wilmington Police | | | |
| | | | Department Manilla | | | |
| | | | Evidence Envelope is also | | | |
| | | | contained within. | | | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?  ☒ NO (included above)  ☐ YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:

On 10/14/03, the Wilmington Police Department Vice Unit conducted a Buy-Bust Operation where they seized approximately (1) ounce of crack cocaine from Burtran MARSHALL. On 04/12/05, Detective Tom Looney relinquished Exhibit #24 to S/A David B. Hughes. S/A Hughes field-tested and processed Exhibit #24 into evidence as witnessed by TFO Lawrence R. Collins. S/A Hughes placed Exhibit #24 into the W.R.O. Drug Evidence Room for safekeeping as witnessed by S/A Mark T. McHugh. Exhibit #24 will be maintained pending transfer to the NERL. Registered return receipt requested.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| S/A David B. Hughes | RAC Timothy F. Bucher |

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| | | |

| 22. SEAL | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |
|---|---|---|
| ☐ Broken  ☐ Unbroken | | |
| 05/27/05 | pm | **LABORATORY REPORT** |

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #24 contains cocaine base

Gross Wt. = 79.2 g
Net Wt. =   18.1 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 24 | 172361 | cocaine base | 66 | % | | 11.9 g | 17.9 g |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| MICHELLE G. CAMILLERI | SENIOR FORENSIC CHEMIST | 05/26/05 |

| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
|---|---|---|
| THOMAS M. BLACKWELL | LABORATORY DIRECTOR | NEW YORK |

**U.S. Department of Justice**
Drug Enforcement Administration

Read Instruction on Reverse
before completing.

## REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

| 1. HOW OBTAINED (Check) | | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|---|
| ☐ Purchase  ☒ Seizure  ☐ Free Sample | | | | | |
| ☐ Lab. Seizure  ☐ Money Flashed  ☐ Compliance Sample (Non-Criminal) | | | | | |
| ☐ Internal Body Carry  ☐ Other (Specify) | | | | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE | | |
|---|---|---|---|---|
| Wilmington, Delaware | 04-13-2005 | | | |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | 7. DATE PREPARED | 8. GROUP NO. |
|---|---|---|---|
| Wilmington Police Department | ☒ Case No. OR ☐ Seizure No. No. 30-03-78368 | 04-13-2005 | Wilmington, DE. R.O. |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| # 26 | N/A | Marijuana | A green leafy substance | 27.5 | 27.5 | N/A |
| | | | contained in (5) clear, | gross | gross | |
| | | | blue, plastic zip lock | grams | grams | |
| | | | bags; purported marijuana. | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?   ☒ NO (included above)   ☐ YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:

On 10/14/03, pursuant to the arrest of Burtran MARSHALL, the Wilmington Police Department Vice Unit executed a search and seizure warrant at 204 West Street, in Wilmington, Delaware and seized (5) blue, plastic zip lock bags of marijuana. On 04/12/05, Detective Tom Looney relinquished Exhibit #26 to S/A David B. Hughes. S/A Hughes field-tested and processed Exhibit #26 into evidence as witnessed by TFO Lawrence R. Collins. S/A Hughes placed Exhibit #26 into the W.R.O. Drug Evidence Room for safekeeping as witnessed by S/A Mark T. McHugh. Exhibit #26 will be maintained pending transfer to the NERL. Registered return receipt requested.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| S/A David B. Hughes | RAC Timothy F. Bucher |

### LABORATORY EVIDENCE RECEIPT REPORT

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| | 05/11 2249 | |

| 22. SEAL | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |
|---|---|---|
| ☐ Broken  ☒ Unbroken  05/27/05    pm | 5/3/05 | |

### LABORATORY REPORT

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #26 contains marijuana

Gross Wt. = 28.3 g
Net Wt. =   2.8 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 26 | 172363 | marijuana | | | | | 2.5 g |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| MICHELLE G. CAMILLERI | SENIOR FORENSIC CHEMIST | 05/26/05 |

| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
|---|---|---|
| THOMAS M. BLACKWELL | LABORATORY DIRECTOR | NEW YORK |

DEA Form - 7
(Sept. 1995)

0003

4/90 may be used until stock is exhausted.

2 - Orig. Office

Read Instructions on Reverse
before completing.

**U.S. Department of Justice**
**Drug Enforcement Administration**

## REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

| 1. HOW OBTAINED (Check) | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|
| ☐ Purchase   ☒ Seizure   ☐ Free Sample | | | | |
| ☐ Lab. Seizure   ☐ Money Flashed   ☐ Compliance Sample (Non-Criminal) | | | | |
| ☐ Internal Body Carry   ☐ Other (Specify) | | | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE | | |
|---|---|---|---|---|
| Wilmington, Delaware | 04-13-2005 | GREEN, Artega | | |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | | | |
|---|---|---|---|---|
| | ☒ Case No. OR  ☐ Seizure No. | 7. DATE PREPARED | 8. GROUP NO. | |
| Wilmington Police Department | No. 30-03-78368 | 04-13-2005 | Wilmington, DE. R.O. | |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| # 25 | N/A | Crack Cocaine | An off white rock substance | 413.9 | 413.9 | N/A |
| | | | contained in (4) clear, | gross | gross | |
| | | | plastic bags; purported | grams | grams | |
| | | | crack cocaine. | | | |
| | | | | | | |
| | | | Note: Wilmington Police | | | |
| | | | Department Manilla | | | |
| | | | Evidence Envelope is also | | | |
| | | | contained within. | | | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?   ☒ NO (included above)   ☐ YES (if Yes, enter exhibit no. and describe original container fully)

**REMARKS:**

On 10/14/03, pursuant to the arrest of Burtran MARSHALL, the Wilmington Police Department Vice Unit executed a search and seizure warrant at 204 West Street, in Wilmington, Delaware and seized approximately (13) ounces of crack cocaine. On 04/12/05, Detective Tom Looney relinquished Exhibit #25 to S/A David B. Hughes. S/A Hughes field-tested and processed Exhibit #25 into evidence as witnessed by TFO Lawrence R. Collins. S/A Hughes placed Exhibit #25 into the W.R.O. Drug Evidence Room for safekeeping as witnessed by S/A Mark T. McHugh. Exhibit #25 will be maintained pending transfer to the NERL. Registered return receipt requested.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| S/A David B. Hughes | RAC Timothy F. Bucher |

### LABORATORY EVIDENCE RECEIPT REPORT

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| | | |

| 22. SEAL | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |
|---|---|---|
| ☐ Broken   ☐ Unbroken | | |

05/27/05                    pm            **LABORATORY REPORT**

25. ANALYSIS SUMMARY AND REMARKS

Exhibit #25 contains cocaine base

Gross Wt. = 413.8 g
Net Wt. = 316.0 g

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 25 | 172362 | cocaine base | 39 | % | | 123.2 g | 312.6 g |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| MICHELLE G. CAMILLERI | SENIOR FORENSIC CHEMIST | 05/26/05 |
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
| THOMAS M. BLACKWELL | LABORATORY DIRECTOR | NEW YORK |

DEA Form - 7
SepL 1995)

0004

/90 may be used until stock is exhausted.

2 - Orig. Office

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

**UNITED STATES OF AMERICA**

V.

**CRIMINAL NO. 05-100-SLR**

**BURTRAN MARSHALL**

**ORDER**

AND NOW, to wit, this        day of        , 2006, upon consideration of the Defendant's Motion to Suppress Physical Evidence and Statements , it is hereby ORDERED and DECREED that said Motion is GRANTED.

BY THE COURT:

_____

J.

## CERTIFICATE OF SERVICE

Peter A. Levin, Esquire, hereby certifies that a true and correct copy of the

within Motion has been served upon upon  by hand delivery to:

David L. Hall, Esquire
Assistant United States Attorney
1007 Orange Street
Suite 700
Wilmington, DE  19899-2046

Dated: 9/8/06

_____
Peter A. Levin