IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

V.

CRIMINAL NO. 05-100-SLR

BURTRAN MARSHALL

_____
_____

DEFENDANT'S MOTION FOR DISCOVERY AND INSPECTION
CONCERNING GOVERNMENT'S USE OF INFORMANTS, OPERATIVES
AND COOPERATING INDIVIDUALS AND MOTION FOR DISCLOSURE OF
EXCULPATORY EVIDENCE
AND NOTICE TO THE GOVERNMENT OF EXCULPATORY EVIDENCE
REQUESTED CONCERNING GOVERNMENT'S USE OF INFORMANTS,
OPERATIVES AND COOPERATING INDIVIDUALS

_____
_____

Burtran Marshall,  by and through his counsel Peter Levin, Esquire, respectfully

requests this Court to enter an Order pursuant to Rule 16 of the Federal Rules of

Criminal Procedure and in accordance with the decisions in Roviaro v. United States,

353 U.S. 53 (1967), Brady v. Maryland, 373 U.S. 83 (1963), and United States v.

Bagley, 87 L.Ed.2d 481, 490 (1985), directing the United States to furnish counsel for

the accused with the following information concerning the use of informants,

confidential informants, witnesses, informers, confidential sources, sources of

information, infiltrators, cooperating individuals, security informers or intelligence

assets who participated in any way or who are material witnesses to any of the events

charged in the indictment. Such individuals are intended to include:

(A)    Any person or entity furnishing information to the government on a confidential

        basis, where such information has been obtained as a result of legitimate

        employment or access to records and is provided consistent with applicable

        law;

(B)    Any other person or entity furnishing information to the government on a

        confidential basis; and

(C)    Any other person or entity providing information or substantial operation

        assistance with some degree of regularity, which may be as infrequent as a few

        times per year, or as frequent as several times per week.

(D)    It is further requested that the information requested be provided specifically as

        it may relate or pertain to the following individuals:

        (1)    All confidential sources as described in any affidavits which have

                been filed in support of requests for surveillance, whether such

                have been revealed or not;

        (2)    All confidential sources referred to in the affidavits in support of the

                search warrant executed on October 14, 2003, at 204 West Street,

                Apt. D, Wilmington, Delaware  specifically including but not limited

                too the person identified as C.I. in the affidavit of Wilmington Police

                Department Detectives Thomas Looney and Vincent Jordan.

        (3)    Any other person identified in any document which has been or

3

will be provided in this case.

1.    Whether such informant, witness, confidential source or cooperating individual was suspected, apprehended or convicted of any crime(s) at any time during which he/she agreed to gather information on behalf of the United States or any other government agency.

2.    What crime(s) or other breaches or law (including jurisdiction and case number) such informant, witness, confidential source or cooperating individual had committed or was suspected of having committed at any time during which he/she agreed to gather information on behalf of the United States or any other governmental agency.

3.    Whether any potential or actual criminal charges against any informant, witness, confidential source or cooperating individual were abandoned, altered, or otherwise disposed of upon his/her agreement to gather information on behalf of the United States or any other governmental agency.

4.    What financial arrangements existed or exist between any informant, witness, confidential source or cooperating individual and the agencies of the United States, the State of Delaware or any other state, including but not limited to:

(a)    Any sums of money paid to any informant, witness, confidential source or cooperating individual; and

(b)    Copies of any vouchers for payment to any informant, confidential source, cooperating individual or witness.

5.    The names, addresses, and criminal records of any informant, witness,

4

confidential source, or cooperating individual to be called as a witness for the government.

6.      The substance of any plea bargain(s) entered into by any agency of the United States, the State of Delaware or the several states, and the authority for any such plea bargains.

7.      The substance of any formal or informal agreements made by the United States, the State of Delaware, or the several states with any informant, witness, confidential source or cooperating individual not to charge crimes or to enter into a plea agreement and the authority for any such agreements.

8.      Information tending to show bias and/or prejudice on the part of any informant, witness, confidential source or cooperating individual whom the government intends to call at trial.

9.      Information tending to show that any informant, confidential source or cooperating individual has made contradictory or inconsistent statements relative to this case, to any related case, or to the defendant.

10.      Information tending to show that any informant, witness, confidential source or cooperating individual suffers from any material defect in perception, memory, veracity or articulation.

11.      The nature of any past or present relationship between any informant, confidential source or cooperating individual utilized in this case and the FBI, CIA, NSA, NSC, DIA, BATF, U.S. Secret Service, IRS, DEA, U.S. Customs or any other

federal agency, the Delaware State Police, the Wilmington Police Department, or any other state agency, including but not limited to the date of such relationship and whether a continuing relationship exists.

12.    The exact date, time and place that any informant was engaged by any federal or state agency, and the name of the agency or agencies.

13.    Whether any informant utilized by the government has taken a polygraph examination regarding the allegations which are the subject of this indictment, and if so, as to each such person:

(a)    The name of the person;

(b)    The date, time and place or the examination or examinations;

(c)    How many tests were given;

(d)    How many tests the person has passed or failed to show deception;

(e)    How many tests the person has failed or showed deception;

(f)    The names and credentials of the operators;

(g)    A copy of the polygraph chart and the examiner's notes for independent evaluation by the defense;

(h)    A copy of the pretest questionnaire and answers; and

(i)    The purpose for which the person was polygraphed.

14.    Whether any informant is or was at the time of the events alleged in the indictment an abuser or alcohol or controlled substances, and if so, then a description

of:

    (a)    The substance;

    (b)    The amount used;

    (c)    The extent of addiction;

    (d)    Current status with regard to alcohol or drug abuse;  and

    (e)    Any and all psychological or psychiatric reports concerning any

informant's alcohol or drug abuse problems.

15.    Whether any informants utilized by the government in this case have ever had

or required any psychiatric or psychological treatment and, if so, then a description of:

    (a)    When and where the treatment occurred;

    (b)     The exact nature of the condition treated;

    (c)    Whether the informant has ever been admitted to a hospital and, if

so, when and where, the diagnosis and prognosis; and

    (d)    Whether the informant is currently receiving treatment and, if so,

the nature of such treatment and the nature of the condition being treated

16.    All evidence regarding any witness the government intends to call who is listed

as an informant for any agency of the United States government, or any agency of

state government, including but not limited to:

    (a)    The exact nature of the relationship between the witness and the

agency;

    (b)    The date, time and circumstances that such relationship came into

existence;

(c)    Whether such a relationship was entered into voluntarily by the witness, or as a result of an agreement to forbear prosecution or for sentencing leniency;

(d)    Any other reason a relationship was entered into other than a voluntary basis by the witness;

(e)    The exact reason the relationship was established; and

(f)    The exact amount of money paid to any informant, when and by what method.

17.    A full and complete statement of all promises, considerations, rewards, or inducements made by the government, its prosecutors, agents or agencies to induce or encourage any witness the government intends to call at trial and who is listed as an informant for any agency of the United States government, wherein the government has agreed to any of the following (including the equivalent under state law):

(a)    Not to prosecute said person for any crime or crimes;

(b)    Not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration to the person;

(c)    To provide a formal grant of statutory immunity, or to provide an informal assurance that the person will not be prosecuted in connection with any testimony, cooperation, or information given;

(d)    To recommend leniency or a particular sentence for any crime or

8

crimes for which the person stands convicted or is expected to be convicted;

(e)    To comply with any prior agreements although said witness may have previously violated a part of their agreement;

(f)    To recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;

(g)    To recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines if that person provides substantial assistance to authorities;

(h)    To recommend or not oppose any downward departures or offense level reductions for the person under the United States Sentencing Guidelines;

(i)    To seal any plea or plea agreement of that person;

(j)    To provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to the person or to friends or relatives of the person in return for that person's testimony, cooperation, or provision of information;

(k)    To make any beneficial recommendation, regarding the person to any state or federal agency;

(l)    To cooperate with any state law enforcement agency and that

9

agency's agreement not to prosecute said person for any crime or crimes
prohibited by state law;

(m)    To make any other recommendation of benefit, or give any other
consideration to the person or friends or relatives of said person; or

(n)    To provide a statement to, or speak with, any law enforcement
agency, prosecution official or court concerning the witness' assistance
or cooperation.

18.    With respect to any informants, all materials contained in the "main files" of the
FBI, DEA, Delaware State Police, Wilmington Police Department, or other
governmental agencies, including but not limited to:

(a)    Correspondence requesting approval to initiate suitability and
pertinence inquiry;

(b)    Indices checks;

(c)    Correspondence requesting authority to operate following
suitability and pertinence inquiry;

(d)    NCIC inquiry and response;

(e)    Identification Division Report;

(f)    Local arrest records;

(g)    Credit checks;

(h)    FD 302s, DEA 6s or equivalent government agency documents in
which the identity of the informant has been revealed;

10

(i)     FD 209s or equivalent government agency documents containing

administrative information that may tend to identify the informant;

(j)     Payment request memos;

(k)     Requests to FBI HQ for additional payment authority;

(l)     Requests to FBI HQ for lump sum payment authority; and

(m)    All other administrative type correspondence and any

correspondence that identifies or tends to identify the informant.

19.    With respect to any informants utilized in this case, any and all information

contained in any file designated by the FBI or DEA as "subfile" including, but not

limited to FD 302s and DEA 6s in which the identity of the informant is concealed,

inserts that conceal the identity of the informant, and annual letters.

20.    Inasmuch as the indictment alleges criminal acts beginning on or before

October 14, 2003,  the defendant requests a copy of any supervisor's informant file

review log or its equivalent, with respect to any informant utilized in the investigation of

this case.

21.    Copies of all memoranda requesting payment for services and/or expenses to

any informant, which memoranda contain a justification for the request for payment.

22.    All approvals for payment for services and/or expenses to an informant utilized

in the investigation of this case.

23.    Copies of any and all teletypes or faxes furnished to the FBI HQ, DEA HQ,

Delaware State Police, Wilmington Police Department, or any other governmental

agency requesting lump-sum payments to any informants and the approval for such payments with respect to any informant utilized in the investigation of this case.

24.     Whether any informant has testified or is expected to testify in connection with this case, and any proposal to pay the informant for such testimony or pay the purported expenses of the informant, and the nature of any discussions with the U.S. Attorney.

25.     Any and all receipts obtained from any informants utilized in the investigation of this case or, if no receipts exist, the written justification for not obtaining a receipt.

26.     If the obtaining of a receipt was not possible, the memorandum setting forth the complete circumstances of payment.

27.     Whether any informants utilized in the investigation of this case were offered any rewards by any private individuals and, if so, the approval and all documentation relating to such reward(s).

28.     Copies of all federal tax returns of any informant utilized in this case filed during the course of the investigation and up until the time of trial.

29.     All receipts signed by prospective government witnesses or informants utilized in this case.

30.     Any and all representations made to informants concerning the potential of reward or payment for information including fees or payments which may be earned from forfeited assets or collected fines.

31.     Whether any informant utilized in this case has previously been used as an

12

informant and/or a witness by any federal or state agency or in any federal or state prosecution and, if so, state:

    (a)    The agency or agencies for which the individual was an informant;

    (b)    The dates when such a relationship existed and the length of such relationship;

    (c)    The dates when and places where the individual testified as a witness; and

    (d)    The exact payments the individual received for services and expenses.

32.    Any and all documentation detailing or setting forth the accomplishments by informants utilized in this case.

33.    The date(s) on which all persons who were informants utilized in this case were "opened" or "closed" as informants.

34.    Whether any persons are currently opened as informants.

35.    Copies of all instructions required to be given any informant used on a continuing basis, any informant authorized to associate in activities, participation in which otherwise would be involvement in unauthorized past or continuing criminal activities, and any informant or confidential source providing substantial operational assistance in an undercover operation.

36.    A copy of the written record in any informant_s or confidential source's file of the instructions given.

37.    Any authorization or approval for any informant or confidential source to engage

13

in any activity that would constitute a crime under state or federal law if engaged in by a private person, and the written findings by supervisory officials that such conduct is necessary to obtain information or evidence and that the need outweighs the seriousness of the conduct involved.

38.    Copies of pretrial services reports on any informant or confidential source prepared for any informant or confidential source who have been arrested for a federal offense.

39.    Copies of pre-sentence reports prepared on any informant or confidential source for any federal conviction or plea of guilty.


WHEREFORE, Defendant, respectfully requests this Honorable Court to enter an Order granting the above Motion.


Respectfully Submitted,


Peter A. Levin
Attorney for the Defendant
1927 Hamilton Street
Philadelphia, PA  19130
(215) 563-3454
(215) 563-3371 fax


14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

V.

CRIMINAL NO. 05-100-SLR

BURTRAN MARSHALL

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

## I. Introduction

Defendant, Burtran Marshall seeks an Order directing the government to turn over all information regarding the use of informants in this case.

## II. Argument

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. See Giglio v. United States, 405 U.S. 150 (1972); United States v. McCrane, 527 F.2d 906 (3d Cir. 1975), aff'd after remand, 547 F.2d 205 (1976). The Supreme Court has also emphasized that impeachment evidence, as well as exculpatory evidence, falls within

15

the Brady rule. United States v. Bagley, 87 L.Ed.2d 481, 490 (1985). Such evidence, if

disclosed and used effectively, may make the difference between conviction and

acquittal. See Napue v. Illinois, 360 U.S. 264 (1959) ("The jury's estimate of the

truthfulness and reliability of a given witness may well be determinative of guilt or

innocence and it is upon such subtle factors as the possible interest of the witness in

testifying falsely that a defendant's life or liberty may depend."). In acknowledging that

the prosecution has a duty to disclose any favorable evidence that could be used at

trial, it is frequently overlooked that the prosecution also has a duty to disclose any

favorable evidence that could be used "in obtaining further evidence." Giles v.

Maryland, 386 U.S. 66, 74 (1967).

Additionally, favorable evidence need not be competent evidence or evidence

admissible at trial. United States v. Gleason, 265 F. Supp. 850, 886 (S.D.N.Y. 1967);

Sellers v. Estelle, 651 F.2d 1074, 1077 n.6 (5th Cir. 1981) (evidence suppressed was

material to the preparation of petitioner's defense, regardless whether it was intended

to be admitted into evidence). The Supreme Court has never precisely pinpointed the

time at which the disclosure under Brady must be made. It is abundantly clear,

however, that disclosure by the government,

> must be made at such a time as to allow the defense to use
> favorable material effectively in the *preparation* and
> presentation of its case, even if satisfaction of this criteria
> requires pre-trial disclosure.

United States v. Pollock, 534 F.2d 964, 973 (D.C. 1976); *accord* United States v.

Presser, 844 F.2d 1275, 1283 (6th Cir. 1988). Manifestly a more lenient disclosure

burden on the government would drain Brady of all vitality. United States v. Elmore,

16

423 F.2d 775, 779 (5th Cir. 1970).

Furthermore, much of the documentary information requested in this motion is discoverable pursuant to Rule 16(a)(1)(C), as being material to the preparation of the defendant's defense. The defendant believes that the confidential informant referred to in the affidavits in support of the search warrant executed on October 14, 2003, at 204 N. West Street, Apt. D, Wilmington, Delaware, specifically the person identified as C.I. in the affidavit of Wilmington Police Detectives Thomas Looney and Vincent Jordan: (1) does not exist or fabricated the information provided; (2) did not provide the Wilmington Police Department with the information they have said was provided or falsely provided that information; and (3) that the informant fabricated that information or that his existence was in fact created by officers of the Wilmington Police Department in order to provide additional support for a search warrant that should not have been issued.

Additionally, the defendant believes that at least one informant, possibly more, will be a lead prosecution witness in this case. That informant(s) may have been a participant in the alleged wrongdoing charged in the indictment. This informant(s), it is believed, may have a criminal record and/or background, and may have a history of violence and substance abuse. It is imperative for the defense to be prepared for trial to have information concerning the circumstances and nature of this informant's and any other informant's relationship with state or federal agencies and officials. The credibility of this informant(s) and the circumstances surrounding how the informant(s) allegedly obtained this knowledge, is vital to the resolution of a Motion to Suppress

17

Evidence filed contemporaneously by the Defendant. If the government is not aware of the existence of the requested information, then it should be required to so respond so the defense can independently investigate and obtain the needed information. The government's response may also include information which will require the defense to travel to investigate and may require Rule 17 subpoenas from this or other courts for documents.

> Circumstances that the Supreme court has found sufficient to require disclosure of the CI's identity are: "(1) the [CI's] possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged."

United States v. Dixon, 123 F.Supp.2d 275, 276-77 (E.D.P.A. 2000) (quoting United States v. Jiles, 658 F.2d 194, 198-99 (3rd Cir. 1981)). Where the CI is a mere tipster whose role was to validate the search, disclosure of the CI's identity is not required. Dixon, 123 F.Supp.2d at 277 (citing McCray v. Illinois, 386 U.S. 311-12 (1967) and United States v. Gaines, 726 F.Supp. 1457, 1465 (E.D.P.A. 1989)). In the instant matter the CI is not a mere tipster. According to the affidavit in support of the search warrant he was responsible for bringing this case to the police, and obtaining all information in support of the search warrant.

Without the CI, if he does exist, there is no probable cause to search the residence in question, there is no search warrant, and there is no evidence against the Defendant. The CI is certainly not just a mere tipster under the facts of this case. See United States v. Williams, 3 F.3d 69, 72 (3rd Cir. 1993) (noting the importance of other

18

factors pertaining to confidential informant's reliability where information provided by

confidential informant is uncorroborated).

In United States v. Dixon, supra, the court found the following information to be

helpful in determining that the information provided by the CI was reliable and

amounted to probable cause for a search warrant: (1) That the police searched the CI

prior to entering the residence to ensure that he or she did not have any drugs of

paraphernalia before entering the defendant's home; and (2) The CI emerged from the

home with a vial of cocaine base and his entrance and exit from the home was

observed by the police. Thus, in Dixon, the CI's statements were corroborated by

independent evidence, namely the cocaine base that the CI apparently procured while

in the defendant's home. Id.; *see also* United States v. Horsley, 621 F.Supp 1060,

1071 (W.D.P.A. 1985) (making a similar finding where, on two dates specified in the

affidavit in support of the search warrant, narcotics were in fact obtained in and

purchased inside the defendant's residence). No such corroborating evidence has

been provided in the case currently pending against this defendant. It is merely the

CI's word. And at this point, it is still impossible to tell if theCI  is a real person or just a

figment of an overly zealous local police officer's imagination.

An unsubstantiated tip by a confidential informant is not sufficient by itself to

provide probable cause for the issuance of a search warrant. *See* United States v.

Butler, 2000 U.S. Dist. LEXIS 129, 5 (E.D.P.A. 2000). The First Circuit Court of

Appeals has found that an informant who alleges that drugs are being sold in a

particular apartment *and offers and makes a controlled buy* clearly corroborates the

19

very criminal activity claimed, thereby supporting a finding of probable cause. United States v. Khounsavanh, 113 F.3d 279, 286 (1st Cir. 1997).

In Roviaro v. United States, 353 U.S. 53 (1957), and United States v. Jiles, supra, the United States Supreme Court and the Third Circuit recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law." Roviaro, 353 U.S. at 59; Jiles, 658 F.2d at 194. Those court's noted, however, that this privilege is not without limitations. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, *or is essential to a fair determination of a cause*, the privilege must give way." Roviaro, 353 U.S. at 60-61 (emphasis added); Jiles, 658 F.2d at 196 (emphasis added); *see also* United States v. Allen, 566 F.2d 1193, 1994 (3rd Cir. 1977); McLawhorn v. North Carolina, 484 F.2d 1, 4-5 (4th Cir. 1973).

While there is no fixed rule as to when disclosure is required, McCray v. Illinois, 386 U.S. at 311, once a defendant sets forth a specific need for disclosure the court should balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." Rovario, 353 U.S. at 62; Jiles, 658 F,2d at 196. The inquiry is case specific, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Rovario, 353 U.S. at 62; Jiles, 658 F,2d at 196.

One potentially relevant factor in the instnat case is the fact that his charges passed from state to federal court at the last possible minute, possibly because of the

20

threat of the case being dismissed.  The court in Roviaro "left substantial leeway to the trial courts to determine on a case-by-case basis whether disclosure is warranted." United States v. Brown, 3 F.3d 673, 679 (3rd Cir. 1993).  Where the CI is shown to be an active participant or a witness with crucial testimony, the court may order disclosure or an in camera evaluation. Jiles, 657 F.2d at 197.  There can be no more crucial testimony to this critical suppression issue than the testimony of the CI, who may or may not even exist.  Since this entire case depends on  the validity of the search warrant, disclosure of the CI's identity must be ordered, or suppression of all the evidence discovered as a result of that search warrant must be granted.

The defendant is not merely speculating or hoping that the disclosure of the CI's identity will result in relevant evidence supporting suppression. See Brown, supra (mere hope is insufficient); United States Bazzano, 712 F.2d 826, 839 (3rd Cir. 1983) (en banc) (mere speculation as to the usefulness of the informant's testimony to the defendant is insufficient).  The defendant knows that the CI does not exist or fabricated the statements he made to the affiant for the search warrant, and the defendant  knows that if theCI  is brought before the court and is subjected to cross-examination about the information he allegedly provided in support of the search warrant, the warrant will be found to be unsupported by probable cause, and suppression of all the evidence against him will be the only justified result.

The government is not entitled to confidentiality of informants where the informant does not actually exist or fabricated the information provided to the affiant who sought the search warrant.  The government has provided no information or

evidence supporting their position that the CI is a real person and that the information he allegedly provided was truthful. Even though confidentiality of informants may serve the public interest in the appropriate case, this is not such a case.

The Defendant has a constitutional right to confront the witnesses against him and to be free from the issuance of warrants that lack probable cause. U.S.Const.Amend. 4 & 6. The government cannot be permitted to circumvent these constitutional guarantees with unsupported and uncorroborated allegations that a CI provided pivotal information to a case, and his anonymity must be maintained. The right of confrontation and cross-examination is an "essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Barber v. Page, 390 U.S. 719, 721 (1981); see also United States v. Riggi, 951 F.2d 1368, 1375 (3rd Cir. 1991). "So essential is cross-examination . . . that the absence of proper confrontation 'calls into question the ultimate integrity of the fact-finding process.'" Riggi, 951 F.2d at 1367 (quoting Ohio v. Roberts, 448 U.S. 56, 64 (1980)). If search warrants like this one are allowed to stand on such fragile footing, what is to stop the over zealous police officer from continuing to obtain search warrants based on a CI's fictional and uncorroborated observations, even after the CI stops providing reliable information, or any information at all? There is nothing to prevent the police from going on fishing expeditions based on nothing more than mere hunches or a suspected criminal's

The disclosures requested herein should be made at least 90 days prior to trial so that appropriate defense preparation can be made. Failure of the government to

provide such information will deny the Defendant the opportunity to adequately

prepare for this very serious case, which constitutes a denial of due process and

effective assistance of counsel.

Respectfully Submitted,

Peter A. Levin
Attorney for the Defendant
1927 Hamilton Street
Philadelphia, PA 19130
(215)563-3454

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

     V.

                        CRIMINAL NO. 05-100-SLR

BURTRAN MARSHALL

ORDER

     AND NOW, to wit, this     day of     , 2006, upon consideration of the Defendant's Motion for discovery and inspection concerning Government's use of informants, it is hereby Ordered and Decreed that said Motion is granted.

BY THE COURT:

_____
                                              J.

# CERTIFICATE OF SERVICE

Peter A. Levin, Esquire, hereby certifies that a true and correct copy of the within Motion has been served upon by hand delivery to:

David L. Hall, Esquire
Assistant United States Attorney
1007 Orange Street
Suite 700
Wilmington, DE  19899-2046

Dated: 9/8/06

Peter A. Levin
Attorney for the Defendant
1927 Hamilton Street
Philadelphia, PA  19130
(215) 563-3454
(215) 563-3371 fax