IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     v.                        )   Crim. No. 05-100-SLR
                               )
BURTRAN MARSHALL,              )
                               )
          Defendant.           )

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

Defendant Burtran Marshall[1] has moved to suppress evidence

and statements and moved to compel disclosure of the identity of

confidential informants ("CI"s).  (D.I. 16, 22)  At the same

time, defendant filed five motions for pretrial discovery.  (D.I.

17, 18, 19, 20, 21)  Plaintiff United States of America has filed

its opposition to which defendant has filed replies.  (D.I. 26,

27, 28, 29)  The court has jurisdiction pursuant to 18 U.S.C. §

3231.

**II.  BACKGROUND[2]**

_____

[1]On November 10, 2005, a federal grand jury for the District
of Delaware returned a one count indictment charging defendant
with possession with intent to distribute more than 50 grams of
cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and
841(b)(1)(A).  (D.I. 6)  Defendant was arraigned on April 28,
2006 and his request to file pretrial motions by September 8,
2006 was granted.  (D.I. 12)

[2]Because the focus of the two substantive motions (D.I. 16,
22), is the affidavit filed in support of the search warrant

On October 14, 2003, Wilmington Police detectives Thomas Looney ("Looney") and Vincent Jordan ("Jordan") executed a search warrant at a residence identified as 204 N. West Street, Apartment D, Wilmington, Delaware ("West Street").[3]  (D.I. 16, app. A)  Contraband was discovered and, subsequently, defendant provided an incriminating statement.  Looney and Jordan are co-affiants on the affidavit.  Together they aver that, in June 2003, they spoke with a confidential informant ("CI") regarding illegal drug distribution in the City of Wilmington.  (D.I. app. A at 4)  The CI identified defendant as a drug distributor who stored large quantities of drugs at West Street.

In August 2003, Looney and Jordan met with a CI[4] in an attempt to organize a controlled purchase of cocaine from defendant at West Street.  The CI called defendant requesting a certain amount of drugs and they agreed to consummate the transaction at a certain location.[5]  Looney and Jordan observed defendant arrive at West Street and then drive away in a vehicle

---

application, the information leading up to the search is taken from the affidavit in issue.  (D.I. 16, app. A)

[3]The first page of the affidavit and application is dated June 5, 2003.  (D.I. 16, app. A, 0039) The last page, the signature page, states "[s]worn and subscribed on this 14[th] of October, 2003."  (Id. at 0047)

[4]It is unclear whether this CI is the same CI the affiants met in June 2003.

[5]Looney and Jordan supplied the CI with "departmental buy money" for the purchase.  (Id. at 5)

to the predetermined location to meet the CI. Later, the CI gave Looney and Jordan a single sandwich bag which a reacted positively as cocaine.

During the third week of August 2003, Looney and Jordan spoke with Detective Liam Sullivan ("Sullivan"). Sullivan stated that a CI[6] told him that defendant was part of a large cocaine distribution ring operating in Wilmington. The CI observed defendant storing, handling, packaging, cooking and selling cocaine from West Street. Looney and Jordan confirmed additional background information provided by Sullivan.

In October 2003, Looney and Jordan met with a CI[7] in order to set up a controlled drug purchase from defendant. The CI called defendant requesting a certain amount of cocaine and they agreed to consummate the transaction at a certain location.[8] Looney and Jordan observed defendant arrive at West Street and then leave to meet the CI at the designated location. Following the meeting, the CI described the events and gave the purchased cocaine[9] to Looney and Jordan.

---

[6]It is unclear whether this is a different CI.

[7]It is unclear whether this is a different CI.

[8]Looney and Jordan supplied the CI with "departmental buy money" for the purchase. (Id. at 5)

[9]It is unclear whether this substance was identified by a field test.

3

On October 14, 2003, Looney and Jordan observed defendant driving a vehicle around Wilmington.  They were aware that defendant's license had been suspended and warrants were pending against him.  While following defendant's vehicle, Looney and Jordan observed defendant pick up a male passenger and commence driving in a manner consistent with that of drug dealers. Affiants stopped the vehicle, discovered marijuana inside and arrested defendant.  After confiscating defendant's keys, Looney and Jordan went to West Street and determined that defendant's keys fit in the door locks.

## III. DISCUSSION

### A.  Frank's Hearing

Defendant's motion to suppress requests the scheduling of a hearing, pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to determine the presence of false statements and/or omissions in the affidavit of probable cause supporting the warrant for the search of the premises known as 204 N. West Street, Apartment D, Wilmington, Delaware.  (D.I. 16)  Specifically, defendant avers that:  (1) the actual dates of events are inconsistent with the signing and review dates, e.g., the affiants spoke with the June 2003 CI after appearing before the justice of the peace and their August 2003 meeting with the CI was two months after the warrant was prepared; (2) there is no information regarding the credibility of the CI(s); (3) it is unclear whether there is one

4

CI or multiple CIs; (4) the affidavit states the affiants were present at certain transactions but does not include personal observations;(5) the date of the August transaction is unspecified; (6) the Sullivan CI is not identified as credible or reliable; (7) the affiants state defendant was stopped because of his traffic violations, not based on drug involvement; (8) the law enforcement officers entered the premises without a warrant after determining that defendant's keys fit the locks; and (9) the warrant was executed four months after it was prepared.

After reviewing the affidavit, it is difficult for the court to conclude whether there is one or multiple CI referenced. A more compelling ambiguity, however, is the inconsistency between the date of the cover sheet (June 5, 2003) and the signature page (October 14, 2003). Plaintiff explains that this "appears to be a typographical error, as all the information contained in the affidavit postdates the June 5, 2003 date" and [t]here is no question that the date the affiants gave their sworn statements, as well as the date that the Justice of the Peace signed the search warrant, was October 14, 2003." (D.I. 29 at ¶4) The court, however, is uncomfortable reaching a similar, definitive conclusion based solely on the representations of counsel. In order to determine whether these concerns are sufficient to mandate a Franks hearing, the court turns to a recent decision from the Third Circuit.

In <u>United States v. Yusuf</u>, 461 F.3d 374 (3d Cir. 2006), the Third Circuit explained that, in <u>Franks</u>, the "Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid." <u>Id.</u> at 383. First a defendant "must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth which is material to the finding of probable cause." <u>Franks v. Delaware</u>, 438 U.S. at 155-56.[10] The burden is on a defendant to present more than conclusory allegations or rest on a "mere desire to cross-examine." <u>Yusuf</u>, at 383. Rather, a defendant "must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." <u>Id.</u>

At bar, it is evident that defendant has not presented affidavits or proof sufficient to carry his burden to surpass the preliminary threshold for a <u>Franks</u> hearing. However, given the court's concern over the date discrepancy and the number of CI(s), defendant shall be given the opportunity to provide the quality of evidence consistent with <u>Yusuf</u>, 461 F.3d at 383 n.8,

---

[10]At a "<u>Franks</u> hearing", the defendant must prove that "(1) the affiant knowingly, and deliberately, or with reckless disregard for the truth made false statements or omissions that create[d] a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." <u>Yusuf</u>, 461 F.3d at 374.

by February 21, 2007, to which plaintiff may file a response by March 7, 2007. See United States v. Welch, 2007 WL 119954 (E.D. Pa. Jan. 9, 2007)(defendant was repeatedly "invited by the court" to offer evidence to satisfy Yusuf burden).

## B. Disclosure of CI

Turning to defendant's second substantive motion, he moves to compel discovery regarding the identity of and information concerning the use of the CI(s), as well as any other individuals who may have participated in any of the events related to the indictment. (D.I. 22) Defendant believes that if any CI exists, he will be a lead prosecution trial witness. Notwithstanding this request, defendant also contends that there is no CI(s) involved in this case; instead, the affiants fabricated the CI(s) to bolster their claims in the warrant affidavit.

In response, plaintiff avers that it does not intend to call any CI at trial as a witness. Plaintiff will rely on testimony from law enforcement witnesses concerning the warrant and defendant's confession. Since the CI "was present for neither of these events [search and confession], and his sole role in this case was to provide the police with probable cause to obtain the search warrant," plaintiff submits that his testimony is not unnecessary. And, given the CI's minor role, his identity need not be revealed.

7

In <u>United States v. Roviaro</u>, 353 U.S. 53 (1957), the United States Supreme Court established guidelines to determine whether disclosure of a confidential informant's identity is warranted. The Court recognized "the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." <u>Id.</u> at 59. However, the privilege is not without limitations. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." <u>Id.</u> at 60-61; <u>accord</u> <u>United States v. Brown</u>, 3 F.3d 673, 679 (3d Cir. 1993). Although there is no precise rule as to when disclosure is required, once a defendant sets forth a specific need for disclosure, the court should balance "the public interest in protecting the flow of information against the individuals' right to prepare his defense." <u>Id.</u> at 62. The result of this balancing will depend upon the particular circumstances of the case, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." <u>Id.</u>

The Supreme Court, in <u>McCray v. Illinois</u>, 386 U.S. 300, 311 (1967), examined the question of whether an informant's identity should be disclosed for purposes of a preliminary proceeding

where the issue is one of probable cause and not guilt or innocence. In McCray, the Court rejected the defendant's attempt to establish a mandatory disclosure rule. Instead, the Court upheld the trial court's ruling against disclosure of the informant's identity as a proper exercise of discretion. Id. at 314. Further, the Court noted that defendant's need to learn the identity of a CI is less compelling in a pretrial suppression hearing than at trial. Id. at 312.

The United States Court of Appeals for the Third Circuit has found that, when applying Roviaro standards, "one of three types of cases" may emerge. United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981). First, there is the "extreme situation such as that in Roviaro itself, in which the informant has played an active and crucial role in the events underlying the defendant's potential criminal liability. In these cases, disclosure and production of the informant will in all likelihood be required to ensure a fair trial." Id. The second group of cases involves confidential informants who were not active participants or eye witnesses but rather tipsters. Generally, courts have found these facts do not warrant disclosure. See United States v. Moreno, 588 F.2d 490, 494 (5th Cir. 1979). The third category "falls between these two extremes and it is in this group that the balancing becomes most difficult." Id. at 197.

Regardless of which <u>Jiles</u> category is implicated, the first step in assessing disclosure is to "ascertain what need, if any, the defendant has alleged for disclosure." The "burden is on the defendant" to demonstrate the need for disclosure. <u>Id.</u> at 197. Speculation that the disclosure will be helpful to the defense will not defeat the government's interest in protecting the identity of a CI. <u>United States v. Bazzano</u>, 712 F.2d 826, 839 (3d Cir. 1983). Trial courts are afforded substantial deference to decide on a case-by-case basis whether disclosure is warranted. <u>United States v. Brown</u>, 3 F.3d at 679.

Consistent with the case-by-case analysis mandated by <u>Roviaro</u>, the court finds that the CI's identity is not crucial to the issue of guilt or innocence. Instead, the identification of the CI is related only to whether there was probable cause for the warrant. To that end, the court is satisfied at this time that the identity of the CI need not be disclosed. However, this issue may be revisited after considering the information to be supplied related to the <u>Franks</u> hearing request.

**C. Discovery Motions**

**1. Defendant's motion to compel disclosure of promise of immunity, leniency or preferential treatment.**

Defendant urges the court to require plaintiff to disclose any promises of immunity, leniency or preferential treatment made in this case. (D.I. 17) In response, plaintiff indicates that it does not have any additional materials in its possession that

10

are subject to disclosure pursuant to <u>Giglio v. United States</u>,
405 U.S. 150 (1972), but will disclose same if any such
agreements with government witnesses that will be called at trial
are made. In light of this uncontradicted representation,
defendant's motion is denied without prejudice to renew.

**2.   Defendant's motion for production of law
enforcement interview reports or notes with individuals who will
not be witnesses at trial.**

Plaintiff avers that it "does not have in its possession any
additional exculpatory evidence within the ambit of defendant's
requests." (D.I. 27) Based on this uncontradicted
representation and plaintiff's acknowledgment of its obligations
to disclose under Fed. R. Crim. P. 16(a)(2), <u>Brady v. Maryland</u>,
373 U.S. 83 (1963) and the Jencks Act, 18 U.S.C. § 3500, the
motion is denied (D.I. 18) without prejudice to renew.

**3.   Motions for pre-trial disclosure and motion in
limine to prohibit proof of 404(B) material, other alleged
uncharged offenses, and wrongs unless disclosed prior to trial.**

Considering that these motions (D.I. 19) pertain exclusively
to evidence to be admitted at trial, they are premature, at this
early stage in the proceedings, and denied without prejudice to
renew.

**4.   Defendant's motion for early disclosure of
material under 18 U.S.C. § 3500.**

Defendant seeks disclosure of any statement of a government
witnesses in its possession "which relates to the subject matter

to which the witness will testify and, in the event the
government has possession of the statement which it believes to
be within § 3500(c), that it deliver such statements to the court
in camera. (D.I. 20) Defendant seeks early disclosure of this
material in order to assist in preparation for trial. United
States v. Goldberg, 336 F. Supp. 1 (D.C. Pa. 1971). In response,
plaintiff avers that all Jencks material has been disclosed to
defendant. (D.I. 27) In the event that plaintiff obtains
additional reports or statements from witnesses that plaintiff
intends to call at trial, plaintiff intends to disclose such
information within a reasonable time before trial. At this
juncture, the court finds plaintiff's position reasonable and,
consequently, defendant's motion (D.I. 20) is denied without
prejudice to renew.

### 5. Defendant's motion to compel discovery and production of exculpatory evidence.

As the caption implies, defendant seeks all favorable
information as mandated by Brady. (D.I. 21) Because plaintiff
avers that it has complied with the obligations of Brady and will
comply with its continuing duty to supplement discovery under
Fed. R. Crim. Pr. 16(c), defendant's motion is denied without
prejudice to renew.

### IV. CONCLUSION

At Wilmington this $\partial d$ day of February, 2007,

IT IS ORDERED that:

12

1.      Defendant's motions (D.I. 17, 18, 19, 20, 21, 22) are denied without prejudice to renew.

2.      Defendant shall file a response considering <u>United States v. Yusuf</u>, 461 F.3d at 383 n.8, by **February 21, 2007.** Plaintiff shall file a response by **March 7, 2007.**

United States District Judge

13