IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 05-100-SLR |
| | ) | |
| BURTRAN MARSHALL | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO
THE COURT'S MEMORANDUM ORDER DATED FEBRUARY 2, 2007**

NOW COMES the United States of America, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Robert F. Kravetz and David L. Hall, Assistant United States Attorneys, and submits the following reply to Defendant's response to the Court's Memorandum Order Dated February 2, 2007.

This Court's Memorandum Order, which narrowed considerably the universe of pending pretrial motions, recognized that the defendant's submissions did not meet the requisite threshold for a Franks[1] hearing because he failed to set forth the necessary evidence to carry his preliminary burden under United States v. Yusuf, 461 F.3d 374, 383 n.8 (3d Cir. 2006). As the Court noted in its Memorandum Order, Yusuf requires a criminal defendant requesting a Franks hearing to "present more than conclusory allegations or rest on a 'mere desire to cross-examine.'" Mem. Order at 6 (D.I. 30) (citation omitted). "Rather, a defendant 'must present *an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.*'" Id. (emphasis added) (citation omitted). Because the Court was concerned by two ambiguities in the affidavit – the number of confidential informants referenced

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

in the affidavit and an inconsistency between the date listed on the cover sheet and that listed on the signature page of the affidavit – the Court gave the defendant an additional opportunity to meet his burden under Yusuf. See, e.g., United States v. Welch, No. 05-618-1, 2007 WL 119954 (E.D. Pa. Jan. 9, 2007).[2] In his response, the defendant failed to submit the quantum of proof necessary to obtain a Franks hearing. Instead, the defendant has rehashed arguments that have been rejected previously by this Court. For these reasons, the defendant's request for a Franks hearing should be denied with prejudice.

The defendant asserts in his response that he has "satisfied the requirements of Yusuf even though no affidavits have been submitted" because "the affidavit of probable cause of the search warrant is replete with material representations and omissions on its face which were necessary for the finding of probable cause." Def.'s Resp. at 3 (D.I. 31) (emphasis in original). On that basis, the defendant contends that the two alleged discrepancies within the search warrant affidavit are sufficient, standing alone, to merit a Franks hearing. Def.'s Resp. at 5 ("The defense submits that the affiant asserted and omitted facts with a reckless disregard for the truth and that *this is clear on the four corners of the affidavit* of probable cause.") (Emphasis added).

This argument, however, fundamentally misunderstands the purpose of a Franks hearing. Franks recognized that there exists a "presumption of validity with respect to the affidavit supporting the search warrant." Franks, 438 U.S. at 171. The narrow exception crafted in Franks permits a criminal defendant to challenge the validity of the warrant only if the defendant can meet a substantial preliminary burden and show that the officer-affiant knowingly or recklessly falsified or omitted information set forth in the affidavit. Id.; United States v. Brown,

---

[2]The Court denied all other pending pretrial motions. See Mem. Order. at 13.

3 F.3d 673, 677 (3d Cir. 1993) (stating that the "substantial preliminary showing of intentional or reckless falsity *on the part of the affiant* must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity") (emphasis in original). Because the mechanism created in Franks requires a showing that the officer-affiant recklessly or intentionally misrepresented or omitted information in the affidavit of probable cause, a conclusory allegation that the affidavit contains inaccurate information, or a mere desire to cross-examine the officer-affiant, is insufficient to merit an evidentiary hearing. Franks, 438 U.S. at 171; Yusuf, 461 F.3d at 383.

The defendant's submissions in the case fail to recognize that the presence of inaccuracies or errors in an affidavit do not in and of themselves support an inference of the officer-affiant's bad faith or recklessness. As the Court of Appeals Brown noted in finding that the defendants failed to make the substantial preliminary showing necessary for a Franks hearing:

> Nor do the inaccuracies in the affidavit's section on the informant's reliability support the defendants' request for a Franks hearing. Search warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place in this area." . . . In short, the inaccuracies in the [the officer's] affidavit's reliability section do not support an inference that [the officer] was recklessly or deliberately untruthful in that portion or any other portion of the affidavit, as is required by Franks.

Brown, 3 F.3d at 678 (citation omitted). For this reason, the defendant's position – that an officer's reckless or intentional conduct can be discerned on the face of the affidavit, without presenting an offer of proof or additional extrinsic evidence – has been rejected repeatedly. See Franks, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or

innocent mistake are insufficient."); Yusuf, 461 F.3d at 383 n.8. The defendant has repeatedly called into question the credibility of the officer-affiants, yet he has failed to proffer *any* evidence to substantiate his bold assertions.[3] Franks requires more to trigger an evidentiary hearing. Because the defendant did not submit the quantum of evidence necessary to obtain an evidentiary hearing, his motion for a Franks hearing should be denied with prejudice.

The sole remaining issue is whether the search warrant affidavit provided probable cause for the Justice of the Peace to issue the search warrant. A warrant may be issued upon a finding of probable cause when "viewing the totality of the circumstances, 'there is a fair probability that . . . evidence of a crime will be found in a particular place.'" United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57), 307 F.3d 137, 146-47 (3d Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The flexible standard set forth in Gates requires a magistrate considering a search warrant application "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 235; Brinegar v. United States, 338 U.S. 160, 176 (1949) (stating that the probable cause standard is a "practical, nontechnical conception"). The District

---

[3]The defendant's attempt to distinguish this case from Yusuf on the basis that the officer-affiant in this case received his information from a confidential informant rather than a sister governmental agency puts the cart before the horse. Def.'s Resp. at 4-5. The Court of Appeals undertook that analysis in Yusuf only *after* it first was satisfied that the defendant met his substantial preliminary showing to merit a Franks hearing. See Yusuf, 461 F.3d at 383 n.8 ("The parties do not dispute that a *Franks* hearing was appropriate based upon the information submitted by the defendant."). The defendant in this case has failed to meet that required threshold.

Court exercises a deferential standard of review when considering the magistrate's probable cause determination, and the warrant should be upheld if there was a "substantial basis" for the magistrate to issue the search warrant. United States v. Ritter, 416 F.3d 256, 262 (3d Cir. 2006). That inquiry is confined solely to whether the information within the four corners of the affidavit established probable cause, and does not invite a consideration of additional evidence beyond the affidavit. See Whiteley v. Warden, 401 U.S. 560, 564-65 & n.8 (1971); United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000).

The defendant argues that the warrant application did not provide the Justice of the Peace with a "substantial basis" to issue the search warrant for two reasons: (1) the affidavit failed to set forth specific facts linking the defendant to illegal drug activity; and (2) the facts alleged in the affidavit did not provide a specific nexus between the defendant's illegal drug activity and the residence at 204 N. West Street, Apartment D. A review of the affidavit, however, shows that there clearly was a substantial basis for the Justice of the Peace to issue the search warrant.

The affidavit states that Wilmington Police Officers conducted two controlled buys with a confidential informant(s)[4] and Marshall in August 2003 and October 2003. The informant told the police in August 2003 that he had been involved in previous drug sales with Marshall. See Aff. ¶ 2. The officers were also familiar with Marshall, and they set up a controlled buy between Marshall and the informant. Id. ¶ 3. Before the transaction took place, the officers

---

[4] The affidavit is unclear whether the August 2003 informant is the same as the October 2003 informant. Whether there was one informant or multiple informants is immaterial in this case with respect to whether the affidavit set forth probable cause for the search. On each of the dates set forth in the affidavit, the informant actively participated in the controlled buy with Marshall. As set forth in greater detail *infra*, the police conducted direct surveillance of those controlled buys and met with the informant immediately after the meetings to obtain the crack cocaine.

searched the informant for contraband, with negative results, and gave the informant departmental "buy money" to purchase cocaine from Marshall. Id. ¶ 4. Immediately prior to the drug deal, officers on surveillance observed Marshall use a key to enter the residence at 204 N. West St. and exit a short time later. Id. Officers then observed Marshall enter a blue Cadillac, Delaware License Plate No. 726770, and proceed to the meeting place with the informant. Officers watched the meeting between Marshall and the informant take place, then followed the informant to meet at a previously agreed-upon location. There, the informant told the officers that a drug deal had transpired and handed the officers a single sandwich bag of cocaine. Id. The informant told the officers that, after the meeting, Marshall drove away in a blue Cadillac. Id.

According to the affidavit, the second controlled buy took place during the first week in October 2003. This transaction was similar to the August 2003 transaction. Wilmington police officers searched the informant for contraband, with negative results, and provided the informant with departmental buy money to purchase cocaine. Id. ¶ 10. After the informant placed a phone call to Marshall and requested a specific amount of cocaine, Marshall directed the informant to meet at a specific location to conduct the deal. Officers thereafter observed Marshall arrive at 204 N. West St., enter the front door by using a key, and exit the door a short time later. Id. Marshall left driving a grey Ford Crown Victoria, with Pennsylvania License Plate No. FHG8509, and met with the informant at the agreed-upon location. After the meeting, officers followed the informant back to a predetermined meet location and debriefed him/her. The informant told the officers that the drug deal took place and handed over a small plastic baggie of cocaine. Id.

The affidavit further states that on October 14, 2003 – less than two weeks after the

second controlled buy – Marshall was pulled over for a traffic stop by Wilmington Police. Marshall was driving the same grey Ford Crown Victoria, and he was pulled over because officers were aware that his license was suspended and that he was wanted on several outstanding warrants. Id. ¶ 11. Marshall initially gave the officers a false name ("Mike"), and he smelled of marijuana. Id. A search of the vehicle revealed five small blue bags of marijuana in the driver's side door pocket. Id. The officers took possession of Marshall's keys and proceeded to 204 N. West. St., Apt. D. Marshall's keys fit the locks at the residence. Id.

The affidavit clearly set forth specific facts linking Marshall to illegal drug activity. Those facts were not derived solely from an anonymous informant's tip, but rather were based primarily on direct surveillance conducted by the officers. The informant actively participated in the controlled buys, observed by the police, that established probable cause. On these facts, the officers had probable cause that Marshall was engaged in illegal drug activity.

In addition, the affidavit linked Marshall's drug activity to 204 N. West. St., Apt. D. The police did not rest on an anonymous tip that Marshall was dealing drugs out of that residence. Immediately prior to each of the controlled buys, police officers watched Marshall enter that residence by using a key and exit the residence a short time later. The police surveillance confirmed the information that the police had received from the informant that Marshall kept his drug stash at the residence, particularly because he stopped at that residence on both occasions prior to engaging in drug transactions. In addition, the police found a key on Marshall when he was stopped on October 14, 2003. Rather than making a warrantless entry into the residence, the police placed the key into the lock in Apartment D to see if it fit. See United States v. Diggs, 569 F.2d 1264, 1265 (3d Cir. 1977) (suppressing evidence found in a lockbox on the basis that agents

should have obtained a warrant prior to opening the lockbox with a key). That action demonstrated that Marshall had a key and access to the apartment. When combined with the informant's tip and the police surveillance of Marshall immediately prior to the drug transactions, the Justice of the Peace had a substantial basis to conclude that there was probable cause that evidence of illegal drug activity linked to Marshall would be found in the apartment.

WHEREFORE, for the reasons set forth above, the United States respectfully requests the Court to deny with prejudice defendant's Motion to Suppress Evidence (D.I. 16), including its request for the Court to hold a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), and its progeny.

                                              Respectfully submitted,
                                              COLM F. CONNOLLY
                                              United States Attorney

                              BY:   /s/ Robert F. Kravetz
                                              Robert F. Kravetz
                                              David L. Hall
                                              Assistant United States Attorneys

Dated: March 6, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 05-100-SLR |
| | ) | |
| BURTRAN MARSHALL | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, this _____ day of _____, 2007, upon consideration of Defendant's Motion to Suppress Evidence and Statements (D.I. 16), as well as Defendant's Response to the Court's Memorandum Order Dated February 2, 2007, the Government's Response thereto, and all other filings related to the Defendant's motion, it is hereby ORDERED that the defendant's motion is DENIED WITH PREJUDICE.

By the Court:

_____

Hon. Sue L. Robinson
Chief Judge, United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal Action No. 05-100-SLR |
| ) | |
| BURTRAN MARSHALL ) | |
| ) | |
| Defendant. ) | |

**CERTIFICATE OF SERVICE**

I, Robert F. Kravetz, Assistant United States Attorney for the District of Delaware, hereby certify that on the 6th of March 2007, I caused to be electronically filed the **Government's Reply to Defendant's Response to the Court's Memorandum Order Dated February 2, 2007,** with the Clerk of the Court using CM/ECF. I further certify that a copy of the foregoing was sent via U.S. mail to counsel of record as follows:

Peter A. Levin
1927 Hamilton St.
Philadelphia, PA 19130

/s/ Robert F. Kravetz
Robert F. Kravetz
Assistant United States Attorney